UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LASHAWN GOLDEN,

      Plaintiff,

v.                                  Case No: 8:14-cv-2129-T-23JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, LaShawn Golden, on behalf of D.D. ("Claimant"), her minor child, seeks judicial review of the denial of her claim for child's Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A.  Procedural Background

Plaintiff filed an application for SSI on behalf of Claimant on May 23, 2011. (Tr. 20.) The Commissioner denied the claims both initially and upon reconsideration. (Tr. 20.) Plaintiff then requested an administrative hearing. (Tr. 20.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff and Claimant appeared and testified. (Tr. 20.) Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Claimant's claim for benefits. (Tr. 20–33.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 2–4, 14.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Claimant, who was born in 2003, claimed disability beginning on August 20, 2009.  (Tr. 20, 23.)  Claimant was a school-aged child on the date the application was filed and at the time of the ALJ's decision.  (Tr. 23.)  Plaintiff alleged disability due to attention deficit hyperactivity disorder ("ADHD") and asthma.  (Tr. 175.)   After conducting a hearing and reviewing the evidence of record, the ALJ determined that Claimant had not engaged in substantial gainful activity since May 23, 2011, the application date.  (Tr. 23.)   The ALJ then determined that Claimant had the following severe impairments: ADHD and asthma.  (Tr. 23.)  Notwithstanding the noted impairments, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 23.)  The ALJ further found that Claimant did not have an impairment or combination of impairments that functionally equaled a listed impairment.  (Tr. 24.)  In making this determination, the ALJ concluded that Claimant had less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, less than marked limitation in the ability to care for herself, and less than marked limitation in health and physical well-being. (Tr. 27–32.)  Accordingly, the ALJ found Claimant not disabled.  (Tr. 32–33.)

### APPLICABLE STANDARDS

An individual younger than the age of eighteen is considered to be disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that can be expected to result in death or that has lasted, or can be expected to last, for at least twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i).

Child disability claims are assessed under a three-step sequential analysis.  20 C.F.R. § 416.924(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; and (3) whether the claimant's impairment or combination of impairments "causes marked and severe functional limitations" for the child.  20 C.F.R. § 416.924(a).  A child's impairment is recognized as causing marked and severe functional limitations if the impairment meets, medically equals, or functionally equals the Listing of Impairments ("Listings") in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.924(a), (d).

To "meet" the Listings, a child must actually suffer from the limitations specified in the Listings.  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278–79 (11th Cir. 2004).  To "medically equal" the limitations found in the Listings, the child's limitations must be "at least of equal medical significance to those of a listed impairment."  *Id.* at 1279 (citing 20 C.F.R. § 416.926(a)(2)).  Alternatively, if a child's impairment does not meet or medically equal a Listing, a child may nonetheless be found disabled if the child's impairment "functionally equals" a Listing, which is determined by the extent to which the impairment limits the child's ability to function in the following six domains of life:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)–(vi).  A child's limitations "functionally equal" those in the Listings, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains or are "extreme" in one of the six domains.  20 C.F.R. § 416.926a(a).  A child's limitation is "marked" when it is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2)(i).  A

marked limitation "interferes seriously" with a child's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation is a limitation that is "more than marked" and "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

A determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to mention a treating doctor or to assign any weight to the treating doctor's opinion and gave improper weight to the state agency psychologists; (2) the ALJ failed to recognize all impairments; (3) the ALJ failed to find that a listed impairment was met; and (4) the ALJ failed to find that the functional equivalent of a listed impairment was met.  For the reasons that follow, none of these contentions warrants reversal.

### A.  Medical Opinions

Plaintiff contends that the ALJ erred by failing to discuss the opinion of a treating physician, Dr. Craig Kunins, M.D., and by failing to assign weight to his opinion.  Plaintiff also argues that the ALJ improperly gave great weight to the opinions of two non-examining state agency psychologists.

### 1.  Dr. Kunins

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted).  The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary.  *Id.* at 1179; *see also* 20 C.F.R. § 404.1527(c)(2) (affording more weight to the opinion of a treating physician).  Good cause exists when the doctor's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion was conclusory or inconsistent with his or her own medical

records.  *Winschel*, 631 F.3d at 1179.  In addition, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*  However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  To the extent that an ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

The medical records reflect that Dr. Kunins is a child and adolescent psychiatrist affiliated with SequelCare of Florida.  (Tr. 338.)  Dr. Kunins performed an individual initial treatment plan (Tr. 333), a treatment plan review (Tr. 387), several medication management visits (Tr. 336, 337, 382, 383, 384, 385, 386, 390, 391, 392, 393, 394, 395), and a psychiatric evaluation (Tr. 338–339) on Claimant from 2011 to 2013.  The medical records from Dr. Kunins are identified in the administrative record, and in the ALJ's decision, as Exhibits 3F and 9F.  (Tr. 25–30, 333–339, 382–395.)  Plaintiff's argument that the ALJ failed to discuss the opinions or findings of Dr. Kunins is without merit.  Upon review of the ALJ's decision, it is clear that the ALJ recounted Plaintiff's numerous visits to Dr. Kunins and the findings of Dr. Kunins in the record.  Indeed, the ALJ recounted Claimant's medical history with Dr. Kunins in his decision and chronicled Claimant's condition from her first visit to Dr. Kunins in April 2011 to her latest visit in February 2013.  (Tr. 25–26.)  Specifically, the ALJ discussed Claimant's treatment history with Dr. Kunins, who started Claimant on medication in 2011, and the reports of Claimant's mother to Dr. Kunins regarding Claimant's condition during each visit.  (Tr. 26, 336,

382, 386, 388, 390, 395.)  The ALJ also recited Claimant's GAF[1] scores provided by Dr. Kunins throughout Claimant's visits from 2011 to 2013 and recounted Dr. Kunins' observations of Claimant, such as Claimant's demeanor ("cooperative . . . pleasant . . . seemed in a good mood") and Claimant's response to medication ("doing much better on in the increased dosage . . . after her medications were adjusted, she did better . . . her medications were continued").  (Tr. 25–26, (Tr. 382–385, 388–392, 395.)

Although the ALJ did not specifically identify Dr. Kunins by name in his decision, the ALJ's decision is replete with summaries of Dr. Kunins' medical reports and citations to his records.  (Tr. 25–26, 28–30.)  Thus, although the ALJ did not identify Dr. Kunins by name in his decision, he thoroughly discussed Dr. Kunins' medical records and opinions and did not err in this regard.  *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that the plaintiff failed to demonstrate reversible error when ALJ did not specifically identify plaintiff's physician by name but summarized the physician's treatment notes and did not affect the ALJ's ultimate decision).  Further, Plaintiff concedes that the opinions of Dr. Kunins are entitled to substantial weight, stating that "there is no good cause for giving less than substantial weight to the opinions of Dr. Kunins."  (Dkt. 18.)

Despite the ALJ's thorough consideration of Dr. Kunins' findings, the ALJ erred by failing to state the specific weight afforded to Dr. Kunins' opinion.  In this case, the error is harmless because, as discussed above, it is clear that the ALJ properly considered Dr. Kunins'

---

[1] The Global Assessment of Functioning ("GAF") is a numeric scale that mental health physicians and doctors use to rate an individual's occupational, psychological, and social functioning.  *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision, 4th ed. 2000)).  GAF scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational, or school settings.  GAF scores between 61 and 70 reflect mild symptoms, with some difficulty in social and occupational functioning.  *Wind v. Barnhart*, 133 F. App'x 684, 687 n.1 (11th Cir. 2005) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000)).

findings and did not discount his opinion, and, as will be discussed below, none of the findings directly contradicted the ALJ's findings.  *See Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).  Therefore, any failure to state the weight given to Dr. Kunins was harmless.

### 2.  State Agency Physicians

Plaintiff also argues that the ALJ erred by affording great weight to the opinions of non-examining state agency psychologists, Dr. Adrine McKenzie, Ph.D., and Dr. Judith LaMarche, Ph.D., both of whom reviewed the record evidence and found that Claimant had less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for oneself, and no limitation in health and physical well-being.  (Tr. 72–80, 81–90.)  Plaintiff does not specify which opinions she contests or provide a sufficient basis for discounting such opinions.

Under the Social Security regulations, an ALJ must consider the opinions of non-examining physicians, including state agency psychological consultants.  20 C.F.R. § 404.1527(f); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011).  In

determining the weight due to a non-examining physician's opinion, the ALJ considers factors such as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the physician's specialization. *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Generally, the opinions of a non-treating or non-examining physician are given less weight than those of examining or treating physicians and, standing alone, do not constitute substantial evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009).  An ALJ may nevertheless give great weight to the opinion of a consulting physician when it is consistent with the record as a whole and supported by clinical findings. *Id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 584–85 (11th Cir. 1991) (finding that the ALJ did not err by relying on a non-examining physician's report when the non-examining physician's report did not contradict the findings of the examining physicians).  Further, state agency medical consultants are considered experts in the Social Security disability evaluation process, and their opinions are entitled to great weight if supported by and consistent with the evidence of record.   20 C.F.R. § 416.927(e)(2)(i); *Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505, 513 (11th Cir. 2014).

Here, the ALJ determined that Claimant had less than marked limitation in attending and completing tasks.  In making this finding, the ALJ relied on the opinions of two state agency psychologists who also found that Claimant had less than marked limitation in this domain.  (Tr. 76, 86–87.)  In evaluating this domain, the ALJ stated:

> Once again, while the claimant's s most recent school records show that she very often had difficulties with her attention and organization, she never had difficulties in other areas such as engaging in quiet activities, acting defiant, or had negative mental symptoms. Her medical records show that on examination, she was fully alert and oriented with fair concentration. Her mother reported that she followed directions and was doing well at school and at home.

(Tr. 29.)  As such, the ALJ did not rely solely on the opinions of the state agency psychologists in making this finding.  *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (holding that "taken alone" the opinions of non-examining physicians "do not constitute substantial evidence on which to base an administrative decision").  Further, their opinions were consistent with the record evidence.  Specifically, the ALJ afforded their opinions great weight because the opinions were supported by Claimant's school and medical records, which indicated that Claimant's symptoms were controlled with medication and do not rise to a listing level of severity.  (Tr. 27, 72–79, 82–90).  As will be discussed in detail below, substantial evidence supports the ALJ's determination that Claimant had less than marked limitation in the domains of attending and completing tasks and interacting and relating with others, thus properly entitling the ALJ to accord great weight to the opinions of the state agency psychologists when consistent with the record as a whole.  *See* discussion *infra* Section III.D.

Further, even if the ALJ improperly gave great weight to the state agency psychologists' finding that Claimant has less than marked limitation in the functional domain of attending and completing tasks, such an error would be harmless because a finding by the ALJ of a marked limitation in this domain would not affect the ultimate determination in this case.  *Dyer*, 395 F.3d at 1211; *see also Caldwell*, 261 F. App'x at 190 (finding that ALJ's failure concerning doctor's opinions was harmless error because the application of the doctor's limitations would not have changed the result).  Plaintiff only challenges the ALJ's findings as to the domains of attending and completing tasks and interacting and relating with others.  However, substantial evidence supports the ALJ's finding that Claimant had less than marked limitation in interacting and relating with others.  *See* discussion *infra* Section III.D.2.  Thus, even if the ALJ had discounted the opinions of the state agency psychologists and found that Claimant had marked limitation in

attending and completing tasks, the ALJ's determination would not be affected, as Claimant failed to establish a marked limitation in an additional domain or an extreme limitation in one domain.

### B.  Additional Severe Impairment

Plaintiff argues that the ALJ erred by failing to find an additional severe impairment of oppositional defiant disorder ("ODD").   At the second step in childhood disability cases, the Commissioner considers whether the child's physical or mental impairment, or combination of impairments, is severe.   20 C.F.R. § 416.924(a), (c).   An impairment will be considered in a disability application only if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.   20 C.F.R. § 416.908.   Thus, an impairment "must be established by medical evidence."   20 C.F.R. § 416.908; *see also* 20 C.F.R. § 416.913(a) (providing that the Commissioner needs evidence from acceptable medical sources to establish whether a claimant has a medically determinable impairment).   In contrast, non-medical evidence, including the testimony of school personnel and family members, may be used to demonstrate that a child's impairment is severe.   20 C.F.R. §§ 416.913(d)(2), (4), 416.924a(a)(2).

An impairment or combination of impairments is not severe if it "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."   20 C.F.R. § 416.924(c).   The impairment or combination of impairments meets the duration requirement if it has "lasted or [is] expected to last for a continuous period of at least 12 months."   20 C.F.R. § 416.909.   The plaintiff has the burden to prove that the child has a severe impairment.   *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985).   It is the functional limitations that may result from a claimant's impairments—not the impairments themselves—

that determine the severity of an impairment.  *See* 20 C.F.R. §§ 416.924(c), 416.924a(b); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (finding that a mere diagnosis says nothing about the severity of the impairment).

When a claimant alleges a multitude of impairments, "a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citation and quotation omitted).  The ALJ has the duty to "make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Id.*  A clear statement that the ALJ considered the combination of impairments constitutes an adequate expression of such findings.  *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011).  However, "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Miller v. Barnhart*, 182 F. App'x 959, 960 (11th Cir. 2006) (citing *Diorio*, 721 F.2d at 728).

The ALJ's determination that ODD was not a severe impairment was supported by substantial evidence in the record.  In this case, Dr. Kunins ruled out ODD as a potential diagnosis and placed no explicit limitations on Claimant because of this disorder.  (Tr. 25, 333–339, 382–407).  Similarly, Dr. McKenzie's and Dr. LaMarche's evaluations listed ODD as a secondary impairment and categorized it as non-severe.  (Tr. 75, 86.)  Other than this, there is no mention of ODD in the medical record, no diagnosis of ODD by an acceptable medical source, and no treatment for ODD in the medical record.  Plaintiff merely makes generalized references to Claimant's defiance in "shutting down when [she] is asked to do something," but Plaintiff points to no evidence that Claimant suffered from ODD or that Claimant's behavior results from

- 12 -

ODD.  Further, Plaintiff did not allege ODD as a basis for Claimant's disability.  (Tr. 175.)  Although the record reflects instances where Claimant occasionally acted out, the ALJ noted contradictory evidence that showed Claimant was generally well-behaved both in school and at home.  (Tr. 25–30.)  Specifically, the ALJ referenced evidence that Claimant was a "joy to have as a student," made friends easily, had above average relationships with her peers, was pleasant and calm during doctor's visits, and did not exhibit negative mental symptoms.  (Tr. 25–30, 259, 268, 385, 393, 394).  Claimant's behavior evaluation from her third-grade teacher reflects that Claimant never actively defies or refuses to comply with adults' requests or rules, never loses temper, is never angry or resentful, is never spiteful or vindictive, never bullies, threatens or intimidates others, and never initiates physical fights.  (Tr. 262.)  In considering Claimant's behavior, the ALJ noted that, on one occasion, Claimant's second-grade teacher reported that Claimant acted defiantly by refusing to do her classroom work.  (Tr. 268.)  However, Claimant indicated to her teacher that she did not take her medication that day, and the teacher noted that this incident was unusual because Claimant "is almost always so well behaved" and she had "never seen this behavior displayed before."  (Tr. 268.)  Further, Dr. Kunins continually noted that Claimant was pleasant, cooperative, and in a good mood during his examinations, and Plaintiff reported that Claimant was doing better in school and at home.  (Tr. 382, 388.)  In sum, the record reflects that Claimant was never diagnosed with ODD and, despite having occasional issues with defiance and irritability, did not exhibit a pattern of behavior to include frequent anger, resentment, spitefulness, vindictiveness, or defiance toward others.

Nevertheless, to the extent that the ALJ erred in failing to make an explicit determination as to whether Claimant's ODD constituted a severe impairment at step two of the sequential evaluation, the error was harmless.  At step two of the sequential evaluation process, the ALJ

found that Claimant had severe impairments of ADHD and asthma.  (Tr. 23.)  Thus, the ALJ found in Claimant's favor at step two and proceeded with the other steps of the sequential evaluation process.  Although Plaintiff contends that the ALJ should have found that Claimant had an additional severe impairment of ODD, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

Here, the ALJ properly considered all of Claimant's relevant impairments and found that Claimant did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (Tr. 23.)  Specifically, the ALJ stated that he "assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not 'severe' in all of the affected domains."  (Tr. 24.)  In making this determination, the ALJ properly examined the medical evidence referenced above and discussed all of Claimant's impairments, including Claimant's reportedly defiant conduct and other impairments that he did not find to be "severe," and thus satisfied the threshold inquiry at step two.  *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853–54 (11th Cir. 2013) (finding harmless error at step two when the ALJ considered and discussed the symptoms that the plaintiff alleged stemmed from his impairment elsewhere in the sequential process and thus performed the analysis that would have been required had he determined the impairment was severe at step two); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two"); *Newsome v. Barnhart*, 444 F. Supp. 2d 1195, 1200–01 (M.D. Ala. 2006)

(affirming ALJ's decision despite the ALJ's failure to specifically address the claimant's diagnosis of ODD and failure to make a finding as to whether ODD constituted a severe impairment because the ALJ "did consider and discuss the underlying evidence relating to the plaintiff's ODD and properly discounted it").

Indeed, since the ALJ proceeded beyond step two and properly considered Claimant's impairments—both severe and non-severe—any error in failing to find an additional severe impairment of ODD would be rendered harmless. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013); *see also Burgin*, 420 F. App'x at 902–03 (explaining that the finding of any severe impairment is enough to satisfy step two, as step three involves evaluating all of a claimant's impairments, severe or non-severe). Accordingly, because the ALJ gave full consideration to the consequences of Claimant's impairments, including the symptoms associated with ODD, at later stages of the analysis, the error at step two was harmless and is not cause for reversal. *See Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination). Therefore, substantial evidence supports the ALJ's decision in finding that Claimant did not suffer from an additional severe impairment of ODD, and even if the ALJ erred at step two, any error was harmless.

### C.  Listing 112.11

Plaintiff argues that the ALJ erred by finding that Claimant did not meet a listed impairment. Specifically, Plaintiff contends that Claimant's impairment of ADHD meets both Section A and Section B in Listing 112.11, and the ALJ erred by finding that Claimant's ADHD did not rise to the level of listing-level severity.

The claimant has the burden of proving the existence of a listing-level impairment. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. *Id.*; *Wilson*, 284 F.3d at 1224. To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson*, 284 F.3d at 1224.

Listing 112.11 concerns ADHD, which is described as being "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.11. To meet the required level of severity for ADHD under Listing 112.11, a claimant must satisfy the requirements of both Section A and Section B of the Listing. 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.11. Section A is a set of medical findings and requires medically documented findings of all three of the following: (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity. 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.11(A). Section B is a set of impairment-related functional limitations and requires a showing that the disorder result in marked impairment in at least two of the following four appropriate age-group criteria: (1) cognitive/communicative function; (2) social functioning; (3) personal functioning; or (4) maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1. §§ 112.02(B)(2), 112.11(B). A limitation is "marked" (i.e., more than moderate but less than extreme) when the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis, based on age-appropriate expectations. 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.00(B).

In this case, Claimant was diagnosed with ADHD in April 2011 by Dr. Kunins of SequelCare of Florida. (Tr. 333, 338–339.) In his decision, the ALJ noted Claimant's diagnosis

and found that Claimant's ADHD was a severe impairment, as it caused "more than minimal functional limitations," but he ultimately found that Claimant's ADHD did not meet or medically equal the severity of Listing 112.11.  (Tr. 23.)  Specifically, the ALJ found that the medical evidence did not document any of the three requirements in Section A of Listing 112.11—marked inattention, marked impulsiveness, or marked hyperactivity—or marked impairment in any two of the four age-specific requirements in Section B of Listing 112.11—cognitive/communicative function; social functioning; personal functioning; or concentration, persistence, or pace.  (Tr. 23.)

Claimant's medical record consists of the following: medical records from St. Petersburg Pediatrics, SequelCare of Florida, and Mease Countryside Hospital.  Of these records, the only records that relate to Claimant's ADHD or mental health are found in those from SequelCare of Florida, as the remaining records relate to Claimant's physical health (e.g., fever, sore throat, blood tests, immunizations, asthma, physical examinations, etc.).  In finding that Claimant's ADHD did not meet the requirements of Section A, the ALJ relied on medical records from Dr. Kunins, a child and adolescent psychiatrist with SequelCare of Florida, which tracked Claimant's progress from 2011 to 2013.  The medical records from Dr. Kunins begin with an individual initial treatment plan and psychiatric evaluation from April 2011, which report that Claimant had difficulties with behavior and grades in school and difficulties paying attention, sitting still, and acting impulsively.  (Tr. 333–339.)  The treatment plan also includes a diagnosis of ADHD, a GAF score of 55, a prescription for a trial of Vyvanse to treat Claimant's ADHD, and rating scale of Claimant's symptoms in which Dr. Kunins rated Claimant's symptoms of impaired attention/concentration as severe.  (Tr. 333.)  After the April 2011 visit, Claimant continued to see Dr. Kunins for the following two years.  Relying on these records, the ALJ found that

Claimant was steadily improving—her rating scale from school showed improvement, her mother reported that was doing better both at home and in school, her grades were rising, her GAF score ranged from 55 to 65, her examinations showed fair memory and concentration, and she was pleasant and cooperative upon examination.  (Tr. 336–339, 382–395.)  However, the ALJ also found that Claimant's difficulties persisted, albeit less frequently and with decreased severity, as she still had difficulties focusing and maintaining her grades on a few occasions. (Tr. 384, 387, 388, 392–393, 395.)

In regard to other evidence, the ALJ considered Claimant's school records, which track Claimant's progress from first grade until third grade.  The Court notes that many of Claimant's school records relied on by the ALJ indicate that Claimant had difficulties staying focused, stating that Claimant "becomes easily distracted," "easily loses focus," "has difficulty listening attentively and following directions and using time wisely," "has difficulty sustaining attention to tasks or activities," "is easily distracted by extraneous stimuli," "does not follow through on instructions and fails to finish schoolwork," has a "constant problem when it comes to completing assignments," "is rarely on task and seldom completes her work," "has trouble finishing work," has difficulty staying focused at school, and is "unable to focus."  (Tr. 205, 210, 259, 260, 262, 263, 264, 269, 272, 334–335, 338, 384.)  However, Claimant's records also reflect that she passed all of her classes, maintained good grades in school, completed tasks in a timely manner, worked independently, and showed improvement in school and at home with medication and continued treatment.  (Tr. 216–223, 259–272, 382–385, 388–392, 395.)  In considering Claimant's school records, the ALJ found that Claimant achieved satisfactory to excellent grades, had high potential and intellect, engaged in above average relationships with peers, only

occasionally acted out, and was capable of producing quality work but lacked motivation.  (Tr. 25.)

Further, the ALJ considered the opinions of Claimant's mother and sister, who reported that Claimant was disobedient and bossy.  However, the ALJ gave less weight to these opinions because Claimant's school records never indicated any issues with bullying or intimidation, and Claimant was able to maintain above average relationships with others.  (Tr. 26.)  Claimant's medical records also include statements from Claimant's mother, who reported that Claimant did well in school and had improved in school and at home as she continued treatment.  (Tr. 26–27.)

Upon review of the record, the ALJ ultimately found that although the record reflected that Claimant had some behavioral outbursts and difficulty staying on task, it also showed that Claimant began improving after starting medications, after which Claimant's grades rose to satisfactory to excellent.  Specifically, the ALJ stated that "[w]hile claimant has difficulties, her symptoms are controlled with medications."  (Tr. 27.)  Thus, the ALJ fully discussed the evidence, properly weighed the evidence, and resolved conflicts in the evidence as required.

Importantly, the Court emphasizes that its review is limited to evaluating whether the ALJ's factual determinations were supported by substantial evidence.  As such, the Court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Dyer*, 395 F.3d at 1210.  Even if there is substantial evidence that may support a finding in the claimant's favor, it is solely within the province of the ALJ to resolve conflicts in the evidence, including conflicting medical opinions, and to assess the credibility of witnesses.  *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971)).  In short, where the ALJ's findings are supported by substantial evidence, the Court may not set those findings aside, even if the Court would have

reached a contrary result as finder of fact and even if the Court finds that the evidence preponderates against those findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Thus, the Court rejects Plaintiff's argument that reversal is appropriate because substantial evidence in the record may also support a conclusion contrary to the ALJ's findings.

In light of the above, the Court finds that substantial evidence supports the ALJ's finding that Claimant has less than marked inattention. Further, even if the ALJ erred in this finding, this error does not require a remand of the ALJ's decision, as Claimant does not meet the remaining two requirements in Section A—marked impulsiveness and marked hyperactivity. Upon review of the ALJ's decision and the record as a whole, there is no medically documented evidence to support a finding that Claimant had marked impulsiveness or marked hyperactivity, nor has Plaintiff cited to any medically documented evidence relevant to these requirements. Therefore, Plaintiff failed to meet her burden of showing that Claimant met all three of the requirements in Section A of Listing 112.11, and substantial evidence supports the ALJ's finding that Claimant's ADHD does not meet or medically equal Listing 112.11.

Even if Plaintiff could show that Section A was met, Claimant does not meet the requirements in Section B of Listing 112.11. As explained above, Section B requires that the claimant's disorder result in marked impairments in at least two of the following: (1) age-appropriate cognitive/communicative function; (2) age-appropriate social functioning; (3) age-appropriate personal functioning; or (4) maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.02(B)(2). While it can be argued that Claimant's ADHD resulted in marked impairment in maintaining concentration, persistence, or pace, the record does not support a finding of marked impairment in any other functional domain. As discussed

below, there is no evidence to suggest that Claimant had marked impairment in social functioning, and Plaintiff does not contend that Claimant had marked impairment in any other domain.  Because Claimant does not meet two of the four criteria in Section B, Claimant fails to satisfy the requirements of Listing 112.11.   Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Claimant's severe impairments do not meet or medically equal Listing 112.11.

### D.  Functional Equivalent of Listing

Lastly, Plaintiff contends that the ALJ erred by finding that Claimant does not functionally equal the Listings.  Specifically, Plaintiff argues that the ALJ erred by finding that Claimant does not have a marked limitation in the following two domains: (1) attending and completing tasks; and (2) interacting and relating with others.  Alternatively, Plaintiff contends that the ALJ should have found an extreme limitation in either domain.

To functionally equal the listings, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities by using the following six major domains of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *Shinn*, 391 F.3d at 1279.  A child's impairment functionally equals the Listings, and thus is of listing-level severity, if, as a result of the child's impairment or combination of impairments, the child has: (1) marked limitations in two of the six domains; or (2) an extreme limitation in one of the six domains. *Shinn*, 391 F.3d at 1279 (citing 20 C.F.R. 416.926a(d)).   In assessing the child's functional limitations, an ALJ considers how the child performs in a supportive setting, how the child functions in school, and the effects of medication or other treatment.  20 C.F.R. § 416.926a(a).

### 1.   Attending and Completing Tasks

The regulations provide that the domain of attending and completing tasks examines a child's ability to focus attention on activities and finish activities at an appropriate pace. 20 C.F.R. § 416.926a(h).   In this domain, a school-aged child between the ages of six and twelve should be able to focus attention in a variety of situations in order to follow directions, remember and organize school materials, complete classroom and homework assignments, concentrate on details and not make careless mistakes in work, change activities or routines without distraction, stay on task and in place when appropriate, sustain attention well enough to complete tasks, and complete a transition task without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

Here, the ALJ found that Claimant had less than marked limitation in attending and completing tasks.   (Tr. 29.)   As discussed at length above, the record evidence shows that although Claimant was easily distracted and had consistent difficulties maintaining focus (Tr. 205, 259, 260, 262, 272, 263, 264, 269), the record also indicates that she achieved satisfactory to excellent grades, showed improvement in her grades and behavior, had high potential and intellect, and was capable of producing quality work.   (Tr. 201–203, 204–205, 218, 259, 260, 263, 264, 270, 272, 336, 337, 382, 383, 385, 386, 388, 393, 394, 395.)   Specifically, Claimant's school records indicate that Claimant received "excellent," "very good," and "satisfactory" grades in all her first-grade classes, showing improvement in her academic performance and a love of learning.   (Tr. 204–205.)   Her second-grade teacher reported that she observed no problems in Claimant's ability to acquire and use information and no problems in Claimant's ability to attend and complete tasks.   (Tr. 216–223.)   Her third-grade teacher also reported that Claimant "is a joy to have as a student," has average grades ranging from As to Cs, and is

capable of completing classwork quickly and with quality if she were more motivated.  (Tr. 259.)

Claimant's third-grade evaluation indicated that Claimant had no difficulty working neatly and

legibly, working independently, demonstrating organizational skills, completing tasks in a timely

manner, cooperating in group activities, or completing assigned homework.   (Tr. 260.)

Claimant's latest medical report also indicated that Claimant's rating scale from her teacher

showed improvement and that Claimant was doing much better in school and at home.  (Tr. 336–

337.)  The medical records from Dr. Kunins indicate that although Claimant had some occasional

difficulties, Claimant progressed from 2011 to 2013 with medication.  (Tr. 336–338, 382–395.)

Although the evidence reflects that Claimant suffered some limitations in this domain in

that she had some difficulties with her schoolwork and in staying on task, the evidence also

makes clear that these limitations were not so severe as to interfere "seriously" with her ability to

attend and complete tasks.  Specifically, Claimant's mother reported that Claimant was following

directions, showed improvement in school, was improving with the help of medication, and

Claimant's medical evaluations showed fair memory and concentration on examination.  (Tr. 25–

27.)  The state agency physicians, to whose opinions the ALJ was entitled to afford significant

weight, also both opined that Claimant had a less than marked limitation in this domain.  (Tr. 72–

80, 81–90.)  On balance, the record shows that although Claimant had severe limitations in her

ability to maintain focus and concentration, Claimant began improving with medication and

treatment and was able to achieve satisfactory grades despite her impairments.   Therefore,

substantial evidence supports the ALJ's finding that Claimant had less than marked limitation in

the domain of attending and completing tasks.

Even if Claimant's limitations in this domain were marked, as Plaintiff contends, the

ALJ's ultimate finding of non-disability still stands, as Claimant did not have marked limitations

in at least one additional domain.  20 C.F.R. § 416.926a(d); *see Muhammad ex rel. T.I.M. v. Comm'r of Soc. Sec.*, 395 F. App'x 593, 601–02 (11th Cir. 2010) (finding that ALJ's failure to find marked limitation in domain was harmless error).  Further, the evidence does not support a finding of an extreme limitation in this domain or in the remaining domains.  Thus, any error the ALJ may have made in this domain is harmless.  *Muhammad*, 395 F. App'x at 602. Accordingly, even if the ALJ erred in evaluating Claimant's limitations in this domain, substantial evidence supports the ALJ's determination that Claimant was not disabled.

### 2.   Interacting and Relating with Others

The federal regulations explain that the domain of interacting and relating with others addresses a child's ability to initiate and sustain emotional connections with others, develop and use appropriate language, cooperate with others, comply with rules, and respond to criticism. 20 C.F.R. § 416.926a(i).  In this domain, a child between the ages of six and twelve should be able to develop lasting friendships with his or her peers, express ideas and tell stories, and begin to understand how to work in a group to solve a problem.  20 C.F.R. § 416.926a(i)(2)(iv).

Here, the ALJ found that Claimant had less than marked limitation in interacting and relating with others.  (Tr. 30.)  The ALJ's decision in this regard is supported by substantial evidence as there is no medically documented evidence to support a finding of marked limitation in this domain.  Rather, Claimant's school records indicate that Claimant was able to maintain above average friendships with peers, made friends easily, and did not engage in bullying, threatening, aggressive, intimidating, or destructive behavior toward others.  (Tr. 30.)  At the hearing, Claimant testified that she enjoyed playing with friends.  (Tr. 43.)  Claimant's medical records reflect that Claimant was calm, cooperative, and pleasant.  (Tr. 30.)  Plaintiff also testified that Claimant participated in cheerleading at school and attended church.  (Tr. 49.)

Upon review of the record, both state agency psychologists also found that Claimant has less than marked limitation in interacting and relating with others.  (Tr. 30.)  In light of this, and the absence of any medically documented evidence to the contrary, there is no evidence to suggest that Claimant had marked (or extreme) limitation in interacting and relating with others. Therefore, because substantial evidence supports the ALJ's conclusion that Claimant's ADHD did not meet, medically equal, or functionally equal a listed impairment and was not disabled, the Commissioner's decision should be affirmed.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1.  The decision of the Commissioner be **AFFIRMED**.

2.  The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on December 9, 2015.


                                JULIE S. SNEED
                      UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  11th Cir. R. 3-1.

Copies furnished to:
The Honorable Steven D. Merryday
Counsel of Record